# United States Court of Appeals for the Federal Circuit

---

**RANDALL B. CARTER,**

*Plaintiff-Appellant,*

v.

**ALK HOLDINGS, INC. (DOING BUSINESS AS ACME SECURITY) and MICHAEL D. HASSEBROCK,**

*Defendants-Appellees.*

---

2008-1168

---

Appeal from the United States District Court for the Northern District of Georgia in case No. 1:06-CV-2080, Chief Judge Jack T. Camp.

---

Decided: May 24, 2010

---

ROBERT M. WARD, Kaplan Ward & Patel, LLC, of Atlanta, Georgia, argued for plaintiff-appellant. Of counsel were BARRY E. KAPLAN and ASHISH PATEL.

ELIZABETH G. BORLAND, Smith, Gambrell & Russell, LLP, of Atlanta, Georgia, for defendant-appellees. With her on the brief were KERRI A. HOCHGESANG, and TODD R. WILLIAMS.

Before MICHEL, *Chief Judge*, NEWMAN, and DYK, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge*.

Myers & Kaplan Intellectual Property Law, LLC ("Myers & Kaplan") appeals from an order of the United States District Court for the Northern District of Georgia imposing sanctions of $30,356.89 pursuant to Rule 11 of the Federal Rules of Civil Procedure.[1]  The district court imposed the sanctions after it found that three claims advanced by Myers & Kaplan on behalf of the plaintiff Randall B. Carter ("Carter"), Counts I, VIII, and XI, were baseless legal theories that had no chance of success and for which no reasonable argument could be advanced.

We uphold the district court's findings that Counts I and XI were frivolous.  However, we conclude that the district court erred in finding Count VIII frivolous.  We therefore affirm-in-part, reverse-in-part, and remand for a determination of whether sanctions should be imposed, and, if so, in what amount.

## BACKGROUND

The complaint alleges the following.  From 1992 to July 14, 2006, Carter was employed as Vice President and

---

[1]    Due to a technical defect in the Notice of Appeal filed in this case, the named "Appellant" in the caption is incorrect.  Myers & Kaplan should have been named in the caption as the "Appellant," and Randall B. Carter's name should not have been included.

General Manager of Acme Security, the trade name for ALK Holdings, Inc. ("ALK"). During Carter's period of employment at Acme Security, he allegedly developed a high security locking assembly for a safe deposit box door on his own time and with his own resources. The lock assembly included a customer lock mechanism that was capable of at least five million actuation configurations. Acme Security and Michael Hassebrock ("Hassebrock"), the President of Acme Security at that time, initially showed no interest in the invention. After a bank expressed an interest in acquiring a license to the invention, Hassebrock proposed a "50/50 partnership" with Carter. Hassebrock and Carter retained a patent attorney (referred to as "John Doe I") to draft a patent application for the invention. The provisional application listed Hassebrock, Carter, and Curtis P. Taylor ("Taylor")[2] as co-inventors. John Doe I then filed with the United States Patent and Trademark Office ("PTO") a non-provisional patent application, Patent Application No. 11/299,853, which claimed priority benefit to the earlier-filed provisional patent application. The non-provisional application listed Hassebrock and Carter as inventors. Taylor's name was not listed on it. Subsequently, Hassebrock allegedly demanded that Carter assign his patent rights to Acme Security. Carter refused, and Acme Security terminated his employment.

On August 31, 2006, Carter filed suit against ALK, Hassebrock, and John Doe I. Carter's complaint contained fifteen claims: nine claims purportedly based on federal law and six on state law. All of the claims related to the allegedly improper listing of Hassebrock on the patent application as a co-inventor with Carter, the

---

[2] The Complaint does not identify who Taylor is or what his relationship was to Hassebrock, Carter, or Acme Security.

purported true inventor of the locking mechanism. John Doe I's representation of both Hassebrock and Carter was alleged to be a breach of duty because of their conflicting interests. Carter also alleged that Carter's interests were sacrificed to those of Hassebrock. Count VIII in particular alleged that John Doe I had represented both Hassebrock and Carter in the drafting and filing of the patent applications and had a fiduciary duty to both of them, which he breached "in violation of 35 U.S.C. *et seq.*, 37 CFR *et seq.*, and the Manual of Patent Examination Procedure (MPEP)." Supplemental App. 35 (capitalization altered).

On June 5, 2007, the district court dismissed Carter's federal claims for failure to state a claim. *Carter v. ALK Holdings, Inc.*, 510 F. Supp. 2d 1299, 1308 (N.D. Ga. 2007). The court also declined to exercise supplemental jurisdiction over his state-law claims and dismissed them without prejudice. *Id.* The court expressed sympathy, however, for Carter's situation:

> The Court is not unsympathetic to Carter's plight. His allegations related to the attempted theft of his invention are troublesome and, if true, will likely entitle him to relief. Unfortunately, this Court is unable to provide Carter with the relief he seeks. If Carter is to vindicate his rights, it must be in the PTO for his claims related to inventorship and in Georgia state courts for his claims related to Defendants' bad faith conduct.

Id. The district court then found sua sponte that the following three claims were frivolous: (1) "COUNT I-VIOLATION OF ARTICLE I, SECTION 8, CLAUSE 8 OF THE UNITED STATES CONSTITUTION AND 35 U.S.C. *et seq.*"; (2) "*COUNT VIII- BREACH OF FIDUCIARY DUTY BY JOHN DOE I IN VIOLATION OF 35 U.S.C. et*

*seq., 37 CFR et seq., AND THE MANUAL OF PATENT EXAMINATION PROCEDURE (MPEP)*"; and (3) "*COUNT XI- VIOLATION OF 35 U.S.C. § 122*."[3]  *Id.* at 1307-08.  The three counts are set forth in an appendix to this opinion.  The court directed "counsel for Plaintiff" to show cause as to why sanctions should not be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure.  *Id.*

Myers & Kaplan replied to the district court's show cause order on June 19, 2007.  On July 3, 2007, ALK filed a response to Myers & Kaplan's submission and a renewed motion for sanctions against Myers & Kaplan.[4]  On December 13, 2007, the district court granted the renewed motion and imposed sanctions of $30,356.89 pursuant to Rule 11 against "Plaintiff's counsel."[5]  *Carter v. ALK Holdings, Inc.*, No. 06-2080, slip op. at 10 (N.D. Ga. Dec. 13, 2007) (order granting sanctions).  The court emphasized that Count VIII "attempted to manufacture a fed-

---

[3]  The statute provides that "applications for patents shall be kept in confidence by the Patent and Trademark Office."  35 U.S.C. § 122(a).

[4]  The original motion was dismissed as moot when the district court issued the show cause order.

[5]  The parties dispute whether the district court sanctioned individual partners at Myers & Kaplan or the firm itself.  Rule 11 provides that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  Fed. R. Civ. P. 11(c)(1).  The district court's order was ambiguous as to whether the sanction was imposed against Myers & Kaplan alone, against individual partners alone, or jointly against Myers & Kaplan and the individual partners.

eral cause of action by couching a garden-variety malpractice claim in terms of patent law." *Id.* at 5.

Myers & Kaplan timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's Rule 11 determination for an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). A court abuses its discretion when it makes a clear error of law or fact in determining whether to impose sanctions. *Cooter*, 496 U.S. at 405; *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998). In reviewing Rule 11 sanctions, we apply the law of the regional circuit. *Intamin, Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1337 (Fed. Cir. 2007) (citing *Antonious*, 275 F.3d at 1072). Thus, we must apply the law of the Eleventh Circuit here.

Under the Eleventh Circuit's jurisprudence, Rule 11 sanctions should only be imposed in limited circumstances where the frivolous nature of the claims-at-issue is unequivocal. The Eleventh Circuit has explained that: "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original). Rule 11 sanctions are appropriate when (1) a party files a pleading that has no reasonable factual basis; (2) the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) the party files a pleading in bad faith for an improper purpose.

*Worldwide Primates v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)).

The central question on appeal is whether the district court erred in finding that Counts I, VIII, and XI were frivolous.

## Count VIII

Count VIII alleged a "breach of fiduciary duty by John Doe I in violation of 35 U.S.C. *et seq.*, 37 CFR *et seq.*, and the Manual of Patent Examination Procedure (MPEP)." Supplemental App. 35 (capitalization altered). The district court found that "[t]he gravamen of Count VIII is that Defendant John Doe I breached the fiduciary duty owed to Plaintiff by representing two parties with conflicting interests and by sacrificing the interests of one party for another." *Carter*, slip op. at 5. In evaluating this claim, the district court stressed its concern that the claim constituted an attempt "to manufacture a federal cause of action by couching a garden-variety malpractice claim in terms of patent law." *Id.* In the district court's view, "[h]owever Plaintiff's counsel couches it, no federal cause of action exists for breach of fiduciary duty under federal patent law or the MPEP." *Id.* at 6.

Resolution of whether Count VIII is a frivolous federal claim requires us to determine if Count VIII arises under 28 U.S.C. § 1338(a). Section 1338(a) provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." The Supreme Court has instructed that a district court's jurisdiction under § 1338(a) "extend[s] only

to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988).

Myers & Kaplan contends that the district court erred by failing to recognize that, even though malpractice is a claim under state law, the claim here is dependent on federal law. This is so, Myers & Kaplan asserts, because the court must measure the scope of John Doe I's fiduciary duty to his clients as a patent practitioner under the Patent Act, the Code of Federal Regulations ("CFR"), and the Manual of Patent Examining Procedure ("MPEP").

The principles discussed in *Christianson* have been applied in a number of our cases involving state malpractice claims where we have concluded that a state malpractice claim arises under federal law because federal law is a necessary element of the claim. In *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1269 (Fed. Cir. 2007), we held that the question of patent infringement was a necessary element of a legal malpractice claim stemming from prior litigation. In *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1283-84 (Fed. Cir. 2007), we held that the district court had jurisdiction over a state malpractice claim based on alleged errors in patent prosecution because the determination of the scope of a patent claim involved a substantial question of federal patent law.[6]

---

[6]    *See also Univ. of W. Va Bd. of Trustees v. Vanvoorhies*, 278 F.3d 1288, 1295 (Fed. Cir. 2002) (holding

Similarly, federal law is a necessary element of Count VIII. Count VIII alleged that the patent prosecuting attorney, John Doe I, breached his fiduciary duties under the patent laws and regulations, including the CFR and the MPEP, by representing two inventors with conflicting interests. The standards for practice before the PTO are governed by federal law, as both the Supreme Court and we have previously recognized. *Sperry v. Fla. ex rel. Fla. Bar*, 373 U.S. 379, 385-86 (1963); *Augustine v. Dep't of Veterans Affairs*, 429 F.3d 1334, 1340 (Fed. Cir. 2005).

The PTO's standards are codified in the CFR and in the MPEP. The CFR regulates practice before the PTO, and the MPEP incorporates language from the CFR. For example, 37 C.F.R. § 10.66, which is incorporated into Section 404 of the MPEP, limits a patent practitioner's ability to represent parties with conflicting interests. Specifically, 37 C.F.R. § 10.66(a) generally requires a patent practitioner to "decline proffered employment if the exercise of the practitioner's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the practi-

---

that § 1338 jurisdiction exists where breach of duty to assign a patent requires resolution of whether the disputed patent application is a continuation-in-part of a prior application); *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (holding that a breach of contract claim requiring resolution of whether all valves sold by licensor were covered by licensed patents provides § 1338 jurisdiction); *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1329 (Fed. Cir. 1998) (holding that a state law claim of injurious falsehood presents a substantial question of patent law where plaintiff had to prove patent invalidity), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999).

tioner in representing differing interests." Similarly, 37 C.F.R. § 10.66(b) generally prohibits a practitioner from continuing "multiple employment if the exercise of the practitioner's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the practitioner's representation of another client, or if it would be likely to involve the practitioner in representing differing interests." In addition, 37 C.F.R. § 11.18 governs representations to the PTO by practitioners and non-practitioners. Specifically, 37 C.F.R. § 11.18(b)(1) requires that, when a party files a patent application or other document with the PTO, that person certifies that "[a]ll statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true." A practitioner who fails to comply with these PTO standards may receive a suspension or disbarment. *See* 35 U.S.C. § 32.

Here, the determination of John Doe I's compliance with the MPEP and the CFR is a necessary element of Carter's malpractice cause of action because the CFR and the MPEP establish John Doe I's expected fiduciary duties to his clients. Count VIII thus involves a substantial question of federal patent law and is not frivolous.[7]

## Count I

While we conclude that Count VIII was not frivolous, we reach a different result with regard to Counts I and XI. Count I alleges a violation of Article I, Section 8, Clause 8 of the U.S. Constitution, which grants Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the

---

[7]    In light of our disposition, we need not determine whether sanctions could have been imposed with respect to Count VIII if we had determined that it did not arise under federal law.

exclusive Right to their respective . . . Discoveries." The district court rejected Myers & Kaplan's assertion that the Patent Clause creates a private cause of action on behalf of inventors. *Carter*, slip op. at 4. The court noted that Myers & Kaplan presented "no legal authority or reasonable explanation as to how [the Patent Clause] does confer a private cause of action." *Id.* Myers & Kaplan contends the district court erred because Count I presents a non-frivolous argument for establishing new law, which Rule 11(b)(2) expressly permits.

We agree with the district court that the Patent Clause does not create private rights of action on behalf of inventors. Myers & Kaplan's assertion that no sanctions should be imposed under Count I because this count presents an argument for establishing new law ignores the fact that the argument for creating new law must be non-frivolous. There is no basis for inferring that Article I, Section 8, Clause 8 provides rights to inventors without congressional action, and we long ago made clear, in the context of the Copyright Clause, that it does not. In *In re Cooper*, our predecessor court rejected the argument that the Clause itself required trademark protection for book titles. 254 F.2d 611, 616 (C.C.P.A. 1958). The court explained that "Article I, Section 8, eighth clause, of the Constitution . . . does no more than grant power to Congress to secure certain rights to authors and inventors insofar as it elects to do so. The cited clause grants no rights to authors and has nothing to do with the registration of trademarks." *Id.* at 616-17.

The Constitution's acknowledgement that inventors possess rights to their inventions does not confer constitutional protection over those rights any more than it does for other types of intellectual property. Because we agree with the district court that Myers & Kaplan's argument regarding Count I contains no legal merit and is not

supported by any reasonable explanation, we conclude that Count I is frivolous.

## Count XI

We reach a similar result with regard to Count XI. Count XI alleges a violation of 35 U.S.C. § 122. Section 122(a) provides that "applications for patents shall be kept in confidence by the Patent and Trademark Office." Count XI alleged that through the unlawful listing of Curtis P. Taylor and Hassebrock as co-inventors of all the subject matter of the patent application, despite the fact that Carter was the one true inventor, the subject matter of the patent application was intentionally disclosed to an unauthorized individual in violation of 35 U.S.C. § 122(a). In concluding that Myers & Kaplan failed to show adequate cause to avoid sanctions for bringing Count XI, the district court rejected the theory that "Section 122 creates a cause of action against attorneys practicing before the PTO" and held that the "plain language of Section 122 shows that it applies only to the actions of the PTO itself." *Carter*, slip op. at 7.

We agree with the district court that § 122 only applies to the actions of the PTO. Myers & Kaplan contends on appeal, however, that the theory of Count XI is not that the defendants violated § 122, but that their conduct fraudulently induced the PTO to violate § 122. Even if we were to assume that inducing a violation of § 122 could somehow create a private cause of action (an issue we do not reach), any parties that may have become aware of the contents of the application did so because of a disclosure by the patent practitioner John Doe I, not because of a disclosure by the PTO. Because Myers & Kaplan has failed to proffer any reasonable explanation for bringing Count XI, we hold that Count XI is frivolous.

## Motion for Sanctions

ALK and Hassebrock have requested that we grant an additional award of sanctions against Myers & Kaplan pursuant to Rule 38 of the Federal Rules of Appellate Procedure for pursuing an allegedly frivolous appeal. As we have determined that Count VIII is not frivolous, the appeal is not frivolous. We therefore deny their motion. We also reject the contention that the appeal should be dismissed for failure to file a proper appendix.

In summary, we conclude that, while the district court correctly determined that Counts I and XI are frivolous, the court erred by finding Count VIII frivolous. We remand for the district court to determine whether sanctions should be imposed, and, if so, in what amount. We note that the district court's primary concern in imposing sanctions appeared to have been that Myers & Kaplan was attempting to make an impermissible claim to federal jurisdiction. Since we have established that Count VIII contains a non-frivolous allegation of federal jurisdiction, the district court's previous concern no longer exists. Under the circumstances, the district court may appropriately conclude that no sanctions should be imposed.

**AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED**

COSTS

No costs.

**APPENDIX**

### *COUNT I- VIOLATION OF ARTICLE I, SECTION 8, CLAUSE 8 OF THE UNITED STATES CONSTITUTION AND 35 U.S.C. et seq.*

28. The Plaintiff repeats and incorporates by reference the averments set forth in Paragraphs 1 through 27 above.

29. John Doe I is registered to practice as a patent attorney before the United States Patent and Trademark Office.

30. Acme had retained John Doe I to draft and file a provisional application on the Carter invention, as alleged in Paragraph 18, and shortly thereafter Acme hired John Doe I as its in-house attorney.

31. John Doe I filed the patent application that claimed priority to the provisional application, listing both Michael D. Hassebrock and Randall B. Carter as co-inventors. Michael D. Hassebrock surreptitiously attempted to defraud Randall B. Carter into signing an assignment to Acme as a part of the filing of the nonprovisional application, inter alia, by placing the Assignment among a group of other documents to be signed, including in such papers the Declaration and a copy of the patent application.

32. Michael D. Hassebrock continued to attempt to intimidate Randall B. Carter into signing an assignment and/or the new employment agreement, threatening Randall B. Carter with termination if Randall B. Carter did not sign either.

33. Because Randall B. Carter was under no obligation to assign his inventive rights in and to the patent

application to Acme, Randall B. Carter's interests were adverse to those of Acme, and thus John Doe I did and at all times continued to represent the conflicting interests of both Michael D. Hassebrock and Randall B. Carter. Thus, an actual conflict of interest existed and continues to exist between Randall B. Carter and Michael D. Hassebrock/ Acme.

34. Despite the presence of an actual conflict of interest, at no time did John Doe I remove himself from representation, nor did John Doe I counsel Randall B. Carter to seek independent counsel. In fact, several times John Doe I, while acting as Randall B. Carter's attorney, falsely advised Randall B. Carter that it was, supposedly, in Randall B. Carter's best interest to assign his rights away to John Doe I's other and conflicting client, Acme.

35. John Doe I has additionally continued to refuse all requests for a copy of the patent application, whether made by Randall B. Carter or his attorneys. Nor has John Doe I allowed Randall B. Carter to participate in the prosecution of the patent application, as all correspondence from the United States Patent and Trademark Office is currently received exclusively by John Doe I.

36. Randall B. Carter is entitled to an order from this Court declaring that John Doe I, by acting as a licensed patent attorney under the authority of the United States Patent and Trademark Office and through the Patent Laws of the United States, has violated Randall B. Carter's Constitutional Rights by depriving Randall B. Carter of his right to join in the prosecution of his patent application and to secure his Constitutional right of the exclusive right to his invention, and moreover by continued, improper and oppressive threats of termination unless Randall B. Carter would acquiesce in such intimidation and hence assign his rights to Acme.

### *COUNT VIII- BREACH OF FIDUCIARY DUTY BY JOHN DOE I IN VIOLATION OF 35 U.S.C. et seq., 37 CFR et seq., AND THE MANUAL OF PATENT EXAMINATION PROCEDURE (MPEP)*

77. The Plaintiff repeats and incorporates by reference the averments set forth in Paragraphs l through 76 above.

78. At all times John Doe I, as the patent attorney representing both Michael D. Hassebrock and Randall B. Carter, owed a fiduciary duty to both Michael D. Hassebrock and Randall B. Carter.

79. John Doe I has repeatedly engaged in the course of conduct of representing clients with actual or potential conflicting interests. For example, John Doe I represented both Acme and the design company retained by Acme without revealing the potential conflict of interest and obtaining written permission by each company to continue representation.

80. As alleged previously, at no time did John Doe I (a) suggest that Randall B. Carter obtain separate and independent legal advice, or (b) remove himself from representation. Instead, several times John Doe I falsely suggested that it was purportedly in Randall B. Carter's best interest to assign his rights to Acme.

81. Despite an actual conflict of interest introduced by his illusory representation of the individual inventor, Randall B. Carter, when he actually represented Acme, John Doe I continued to offer legal advice against the best interests of his client, Randall B. Carter, and in favor of his conflicting clients Michael D. Hassebrock and Acme.

82. John Doe I has breached his fiduciary and legal duties by continuing representation of two parties with conflicted interests and by sacrificing the rights of one party, Randall B. Carter, for the benefit of the other party, Acme.

## COUNT XI- VIOLATION OF 35 U.S.C. § 122

102.    The Plaintiff repeats and incorporates by reference the averments set forth in Paragraphs 1 through 101 above.

103.    As alleged above in the Complaint, Randall B. Carter is the one and true inventor of all the subject matter of the patent application.

104.    This knowledge was known at all times by Michael D. Hassebrock, John Doe I, and Curtis P. Taylor, the listed co-inventors to the provisional application.

105.    35 U.S.C. § 122 provides that "applications for patents shall be kept in confidence by the Patent and Trademark Office."

106.    Through the unlawful listing of co-inventors Curtis P. Taylor and Michael D. Hassebrock, the subject matter of the patent application was intentionally disclosed to an unauthorized individual in contravention of 35 U.S.C. § 122.

107.    The intentional act by John Doe I and Michael D. Hassebrock has caused significant harm to the right of Randall B. Carter to have his application remain confidential for a certain period of time.

# United States Court of Appeals for the Federal Circuit

---

**RANDALL B. CARTER,**
*Plaintiff-Appellant,*

v.

**ALK HOLDINGS, INC. (DOING BUSINESS AS ACME SECURITY)
and MICHAEL D. HASSEBROCK,**
*Defendants-Appellees.*

---

2008-1168

---

Appeal from the United States District Court for the Northern District of Georgia in Case No. 1:06-CV-2080, Chief Judge Jack T. Camp.

---

NEWMAN, *Circuit Judge*, concurring-in-part, dissenting-in-part.

I join the court's holding that Count VIII of the complaint, as filed on behalf of Randall B. Carter, does not violate Rule 11; this of itself suffices to establish federal jurisdiction of the related issues presented in Count I and Count XI, removing the foundation of the Rule 11 sanction. Thus I write separately because the sanction based on Counts I and XI should now also be reversed, instead of remanded for reconsideration.

Although I strongly support the authority of the trial court to enforce the highest standards of attorney discipline, I cannot discern a supportable basis for violation of Rule 11 in the invocation of the Constitution in Count I of the complaint; or in seeking support in the Patent Act, in Count XI, for the asserted violation of the inventor's right of secrecy. The Eleventh Circuit has explained that "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990). While my colleagues have invited reconsideration by the district court of the basis for the Rule 11 sanction, now that a basis for federal jurisdiction has been recognized in the complaint as filed, I see no reason to prolong this satellite litigation on Rule 11.

The district court dismissed Count I under Federal Rule of Civil Procedure 12(b)(6), having concluded that Mr. Carter's "allegations related to the attempted theft of his invention are troublesome and, if true, will likely entitle him to relief," *Carter v. ALK Holdings, Inc.*, 510 F. Supp. 2d 1299, 1308 (N.D. Ga. 2007), but that these allegations did not state claims for relief under the Constitution or the patent statute. The paragraphs of the complaint presented in support of Count I recite the assertedly improper acts of the defendants: filing a patent application naming a non-inventor as a joint inventor (¶31); barring Mr. Carter from access to the prosecution of his patent application (¶35); attempting to deceive or coerce Mr. Carter into assigning his invention to his then employer (¶¶31, 32, 34); and conflict of patent attorney interest (¶¶31–36). The relief requested in Count I is summarized in the count's culminating paragraph:

> 36. Randall B. Carter is entitled to an order from this Court declaring that John Doe I,

> by acting as a licensed patent attorney under the authority of the United States Patent and Trademark Office and through the Patent Laws of the United States, has violated Randall B. Carter's Constitutional Rights by depriving Randall B. Carter of his right to join in the prosecution of his patent application and to secure his Constitutional right of the exclusive right to his invention, and moreover by continued, improper and oppressive threats of termination unless Randall B. Carter would acquiesce in such intimidation and hence assign his rights to Acme.

The issue on this appeal is not whether Count I was properly dismissed under Rule 12(b)(6); the issue is whether counsel should be sanctioned for presenting this count at all. It is not that unusual to invoke the Constitution in patent cases. In *Figueroa v. United States*, 466 F.3d 1023, 1029–34 (Fed. Cir. 2006), this court reviewed the merits of a claim that congressional diversion of patent fees violates Article I, Section 8, Clause 8 because the fees are used for non-patent-related purposes. In *Association for Molecular Pathology v. U.S. Patent & Trademark Office*, __ F. Supp.2d __, 2010 WL1233416 (S.D.N.Y. Mar. 29, 2010), the court responded to the plaintiff's claim that patenting of genetic material violates Article I, Section 8, Clause 8 by citing the "doctrine of constitutional avoidance," which provides that "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter," *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). The court held that since the issue was resolved on other grounds, the court need not reach the constitutional claim, and dismissed the constitutional claim without prejudice. *Ass'n for Molecular Pathol-*

*ogy*, 2010 WL 1233416, at \*51. In a parallel holding, the district court here stated that application of state law could resolve the questions of inventorship, coercion, and attorney misfeasance that are the bases of Count I. This view does not convert the pleading of the constitutional claim into a Rule 11 violation.

The Eleventh Circuit has explained that Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) (quoting Rule 11 Advisory Committee Notes, 1983). Amendments to Rule 11 have been made to "place[] greater constraints on the imposition of sanctions" and to "reduce the number of motions for sanctions presented to the court." Rule 11 Advisory Committee Notes, 1993. Such tolerance is warranted here, where there is no issue of fraud, misrepresentation, bad faith, abuse of process, or other egregious act in presenting this pleading. It may be that invoking the Patent Clause of the Constitution to support the inventor's claim of exclusive right to this invention is a "creative claim," but it is not so outré as to warrant the blot of Rule 11 attorney sanction.

Count XI of the complaint presents the theory that the secrecy of Mr. Carter's patent application was violated by John Doe's disclosures to the persons who were improperly named as joint inventors. The district court dismissed this count on the ground that 35 U.S.C. §122 is directed only to secrecy within the Patent and Trademark Office. Again, the issue on appeal is not the merits of the dismissal; the issue is whether the pleading of Count XI was "egregious" and should be sanctioned. *See Davis*, 906 F.2d at 538 ("Although we have in the past viewed certain claims as legally groundless, we have done so only in circumstances far more egregious than those involved here.").

The district court attributed its overall levy of Rule 11 sanction to counsel's attempt to bring a garden-variety state court action into the federal system. Now that this court has determined that a substantial question of patent law was implicated, such that the case could have been pursued in the federal system, I see no need to prolong the Rule 11 debate, for its premise no longer exists. I would reverse the sanctions ruling.